**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

MARCUS WALKER, INDIVIDUALLY,
AND ON BEHALF OF
THE WRONGFUL DEATH BENEFICIARIES OF
DE'AUBREY RAJHEEM ROSCOE,
DECEASED                                                                  **PLAINTIFF**

**v.**                                      **CIVIL ACTION NO. 4:20-CV-00156-GHD-JMV**

CITY OF INDIANOLA POLICE OFFICER
SHABRIDGET CALDWELL,
INDIVIDUALLY AND IN HER OFFICIAL CAPACITY;
CITY OF INDIANOLA POLICE OFFICER
BENNIE MILTON,
INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY;
CITY OF INDIANOLA POLICE OFFICER
REGINA STRONG,
INDIVIDUALLY AND IN HER OFFICIAL CAPACITY;
THE CITY OF INDIANOLA, MISSISSIPPI;
MEDSTAT EMS CREW MEMBER JONATHAN UPP,
INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY;
MEDSTAT EMS CREW MEMBER
ANDREW WALDA,
INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY;
MEDSTAT EMS, INC.;
AND JOHN DOES 1-5,
INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITY                  **DEFENDANTS**

<u>**OPINION GRANTING DEFENDANTS SHABRIDGET CALDWELL, BENNIE
MILTON, AND CITY OF INDIANOLA'S MOTIONS FOR SUMMARY JUDGMENT**</u>

Presently before the Court are the Motions for Summary Judgment filed by City of

Indianola, Mississippi, Police Officers Shabridget Caldwell and Bennie Milton (herein "the

Defendants") [111; 113], in response to Plaintiff Marcus Walker's Complaint [1] alleging—

individually and on behalf of the heirs and wrongful death beneficiaries of De'Aubrey Rajheem

Roscoe, deceased [1 at 1]—violations of the deceased's rights under 42 U.S.C. § 1983 [1 at ¶¶ 33-

43] and claiming that the Defendants are liable to the Plaintiff under theories of negligence [1 at

1

¶¶ 44-63], gross negligence [1 at ¶¶ 126-127, 131], and intentional infliction of emotional distress [1 at ¶¶ 132-136]. For the reasons stated herein, the Defendants' Motions for Summary Judgment are granted.

## I.     <u>Factual and Procedural Background</u>

The Plaintiff is a resident of Tarrant County, Texas, and brings this action on his own behalf and on behalf of the heirs and wrongful death beneficiaries of De'Aubrey Rajheem Roscoe, who died during the events at the heart of this proceeding [1 at ¶ 1]. The Plaintiff is the brother of the deceased [1 at ¶ 139]. Defendant Shabridget Caldwell is—and was during the events that prompted this lawsuit—employed as a police officer for the City of Indianola, Mississippi, Police Department (herein "IPD") [*Id.* at ¶ 2]. Defendant Bennie Milton is and was likewise employed as an Indianola police officer [*Id.* at ¶ 3]. During the events of this lawsuit, both were acting within the course and scope of their employment as police officer [*Id.* at ¶¶ 2-3].

The facts, as alleged by the Plaintiff, are as follows. On April 24, 2019, at approximately 8:00 p.m., Roscoe was shot on Oak Street in Indianola [*Id.* at ¶ 18]. Medstat EMS, Inc., (herein "Medstat") received a call about the shooting at 8:01 p.m., and consequently dispatched some of its crew members to the scene [*Id.* at ¶ 19]. Similarly, at 8:05 PM, the IPD received a report about the shooting and dispatched some of its officers [*Id.* at ¶ 20]. These officers arrived on the scene at 8:09 p.m. and spoke with Roscoe, who was lying on his abdomen on the lawn at 608 Oak Street [*Id.* at ¶¶ 21-22]. The officers noted that he was lying in a pool of blood, and appeared to be shot in his right upper arm and right upper back [*Id.* at ¶ 23]. They questioned him about his injuries [*Id.* at ¶ 24]. At 8:11 p.m., the Medstat crewmembers arrived on the scene, where they found Roscoe lying on the ground, awake, alert, oriented, and with no active bleeding [*Id.* at ¶¶ 25-27]. They placed him on a stretcher, and loaded him into an ambulance, where they conducted a more

thorough examination of their patient and found no other obvious signs of trauma [*Id.* at ¶¶ 28-29]. At 8:27 p.m., the ambulance transporting Roscoe and the Medstat crew members left the scene, heading to the South Sunflower County Hospital; it arrived there at 8:34 p.m. [*Id.* at ¶¶ 30-31]. Roscoe was pronounced dead at 8:56 p.m. [*Id.* at ¶ 32].

To be clear, IPD was called five minutes after the shooting, and its officers arrived at the scene four minutes after receiving the call. Medstat medical professionals were called one minute after the shooting, and arrived at the scene ten minutes after receiving the call. The Medstat crewmembers treated Roscoe for sixteen minutes at the scene, and then left the scene in an ambulance heading toward the local hospital.

The Plaintiff filed his Complaint on September 3, 2020 [1]. In it, he alleges three primary causes of action: violations under 42 U.S.C. § 1983 [1 at ¶¶ 33-43]; liability under a theory of negligence and a duty to use reasonable and ordinary care when interacting with the deceased [1 at ¶¶ 44-131]; and intentional infliction of emotional distress [1 at ¶¶ 132-36]. The Plaintiff seeks compensatory damages of $500,000; punitive damages of $500,000; declaratory and injunctive relief; and attorney's fees and costs [1 at 24].

Defendants Caldwell and the City of Indianola filed their Answer and Affirmative Defenses on October 19, 2020 [6]. Defendants Milton and Regina Simpson (inaccurately identified by the Plaintiff as Regina Strong) filed their Answer and Affirmative Defenses on October 23, 2020 [16]. Defendant Medstat filed its Answer and Defenses on November 4, 2020 [19]. Defendant Upp filed his Answer and Defenses on December 2, 2020 [41].

On March 3, 2021, Defendant Upp filed a Motion to Dismiss under Rule 4(e) of the Federal Rules of Civil Procedure, arguing that the Plaintiff failed to properly serve Defendant Upp [71]. The Plaintiff filed his Response in Opposition to Defendant Upp's Motion to Dimiss [75] and its

corresponding Memorandum in Support of said Response [76]. Defendant Upp filed his Rebuttal on March 18, 2021 [78].

On March 22, 2021, the Plaintiff filed a Notice of Voluntary Dismissal Without Prejudice of Defendant Simpson, who had been inaccurately identified by the Plaintiff as Regina Strong [79].

On December 23, 2021, Defendants Caldwell and Milton filed their Motion for Summary Judgment [111] and its corresponding Memorandum in Support [112]. That same day, Defendant City of Indianola also filed its Motion for Summary Judgment [113] and its corresponding Memorandum in Support [114].

On January 20, 2022, the Plaintiff filed his Response jointly responding in opposition to both Motions for Summary Judgment [121], along with the corresponding Memorandum in Support of his Response [122]. He subsequently filed a modified version of his Response on January 21, 2022 [125]. On January 27, 2022, Defendant Caldwell, Milton, and the City of Indianola filed their Reply in Support of their Motions for Summary Judgment [126].

The matter is now ready for review.

## II.    <u>Legal Standards</u>

### A.  **Summary Judgment**

Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). This rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. The party moving for summary judgment bears the burden of identifying its basis for the motion, and must point to specific parts of the record that support its contention of an absence of a genuine dispute of material fact. *Id.* at 323.

After the moving party does so, the burden shifts to the non-moving party, which must "go beyond the pleadings and by … affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). When there is a dispute about the facts, the Court must view the facts in the light most favorable to the non-moving party and likewise must draw reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F.App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

Any claim that is not raised in a response to a defendant's motion for summary judgment is deemed to be waived. *Aldrup v. Caldera*, 274 F.3d 282, 288 (5th Cir. 2001). Moreover, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (citing *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas*, 136 F.3d at 458. That said, summary judgment "must be used cautiously or it

may lead to drastic and lethal results." *Murrell v. Bennett*, 615 F.2d 306, 309 (5th Cir. 1980).

## B. 42 U.S.C. § 1983, Qualified Immunity, and Immunity Under the Mississippi Tort Claims Act

 "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
42 U.S.C. § 1983.

To state a valid claim under 42 U.S.C. § 1983, "a plaintiff must (1) alleged a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *James v. Texas Collin C'ty*, 535 F.3d 365, 373 (5th Cir. 2008). "In claims against state officials under 42 U.S.C. § 1983, the official may raise the affirmative defense of qualified immunity. The plaintiff has the burden to negate the defense of qualified immunity." *Griggs v. Brewer*, 841 F.3d 308, 312 (5th Cir. 2016) (citing *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)). In such cases, the plaintiff "must plead specific facts that, if proved, would overcome the individual defendant's immunity defense; complaints containing conclusory allegations, absent reference to material facts, will not survive motions to dismiss." *Geter v. Fortenberry*, 849 F. 2d 1550, 1553 (5th Cir. 1988); *see also Streetman v. Jordan*, 918 F.2d 555, 557 (5th Cir. 1990) ("Mere conclusory allegations and bold assertions are insufficient to meet this heightened standard.").

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft*, 563 U.S. at 735 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts have discretion to decide which of these two prongs to address first, and they should "think carefully before

expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or statutory interpretation that will 'have no effect on the outcome of the case.'" *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 236-37 (2009)). An official's "conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Id.* at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). While a plaintiff need not present a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.*

The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Its protection "applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). "As the qualified immunity defense has evolved, it provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Intent is not a factor when considering whether qualified immunity applies, in that "under the *Harlow* standard… an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." *Id.*

Thus, "[w]hether a defendant asserting qualified immunity may be personally liable turns on the objective reasonableness of the defendant's actions assessed in light of clearly established law." *Valencia v. Wiggins*, 981 F.2d 1440, 1447 (5th Cir. 1993) (citing *Anderson*, 483 U.S. at 639). When assessing a defendant's conduct within the context of qualified immunity, a court

7

"need not determine whether an actual constitutional violation occurred," but rather whether the defendant's conduct "was unreasonable in the light of clearly established law." *Griggs*, 841 F.3d at 315. "[I]f officers of reasonable competence could disagree" on the underlying issue at the heart of a qualified immunity case, then the protection should apply. *Malley*, 475 U.S. at 341. Moreover, since qualified immunity is a protection from suit rather than a mere protection from liability, courts have repeated stressed that immunity questions be resolved at the earliest opportunity. *Id.* at 231-232.

The qualified-immunity standard also "gives ample room for mistaken judgments." *Malley*, 475 U.S. at 343. While an officer's "actions may not have been as restrained as we would like to expect from model police conduct… qualified immunity 'protect[s] officers from the sometimes hazy border between excessive and acceptable force.'" *Griggs*, 841 F.3d at 315 (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001); *see also Graham v. Connor*, 490 U.S. 386, 396-97 (1989) ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.").

Additionally, the Mississippi Tort Claims Act also provides an avenue for immunity.

> "A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim…(c) [a]rising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or the fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of the injury [or] (d) [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused [.]

Miss. Code Ann. § 11-46-9(1)(c-d).

8

### C. Negligence and Duty to Use Reasonable and Ordinary Care

A central premise of negligence claims relates to the concept of a duty requiring an alleged defendant to act in a certain manner toward an aggrieved plaintiff. *Southport Transit Co. v. Avondale Marine Ways, Inc.*, 234 F.2d 947, 954-55 (5th Cir. 1956). To recover, a "plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant and the risk of harm was within the scope of protection afforded by the duty breached." *Ryder v. Union Pacific Railroad Company*, 945 F.3d 194, 199 (5th Cir. 2019). "[A]bsent duty; there can be no actionable negligence." *Central Stikstof Verkoopkanter, N.V. v. Pensacola Port Authority*, 316 F.2d 189, 190 (5th Cir. 1963). With respect to police officers, other courts have abided by the "uniformly accepted rule" built on the "fundamental principal that a government and its agents are under no general duty to provide public services, such as police protection, to any particular individual citizen." *Warren v. District of Columbia*, 444 A.2d 1, 4 (D.C. Ct. App. 1981) (citing *Turner v. United States*, 248 U.S. 354, 357-58 (1919)). "Accordingly, courts have without exception concluded that when a municipality or other governmental entity undertakes to furnish police services, it assumes a duty only to the public at large and not to individual members of the community." *Id.*; see also *Westminster Investing Corp. v. G.C. Murphy Co.*, 434 F.2d 521, 523-24 (D.C. Cir. 1970). "Courts which have had the opportunity to consider comparable situations have concluded that a request for aid is not itself sufficient to create a special duty." *Warren*, 444 A.2d at 6. "A person does not, by becoming a police officer, insulate himself from any of the basic duties which everyone owes to other people, but neither does he assume any greater obligation to others individually. The only additional duty undertaken by accepting employment as a police officer is the duty owed to the public at large." *Id.* at 8.

### D.  Intentional Infliction of Emotional Distress

"This tort requires conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Campbell v. Novartis Pharmaceutical Co.*, 836 Fed.Appx 272, 274 (5th Cir. 2020) (quoting *Bowden v. Young*, 120 So. 3d 971, 980 (Miss. 2013)). "Relief depends on 'the nature of the act itself—as opposed to the seriousness of the consequences.'" *Id.* "Under Mississippi law, 'a party may recover for intentional infliction of emotional distress, "where there is something about the defendant's conduct which evokes outrage or revulsion."'" *Seibert v. Jackson Cty., Miss.*, 851 F.3d 430, 437 (5th Cir. 2017) ((quoting *Franklin Collection Serv., Inc. v. Kyle*, 955 So.2d 284, 290 (Miss. 2007), quoting *Morrison v. Means*, 680 So.2d 803, 806 (Miss. 1996)). "The standard is whether the defendant's behavior is malicious, intentional, willful, wanton, grossly careless, indifferent or reckless." *Id.* (quoting *Leaf River Forest Prods., Inc. v. Ferguson*, 662 So.2d 648, 659 (Miss. 1995)).

### III.     Analysis and Application

### A.  The Plaintiff's 42 U.S.C. § 1983 Claims

In his Complaint, the Plaintiff argues that the deceased's rights were violated when (1) Defendant police officers questioned the deceased while he was in need of medical care [1 at ¶ 36]; (2) delayed the administration of medical care to the deceased [*Id.* at ¶ 37]; (3) interfered with the administration of medical care to the deceased [*Id.* at ¶ 38]; (4) denied the administration of medical care to the deceased [*Id.* at ¶ 39]; (5) did not ensure that the deceased received necessary medical attention [*Id.* at ¶ 40]; (6) exhibited a deliberate indifference to the deceased's need for medical care [*Id.* at ¶ 41]; (7) did not take reasonable measures to guarantee the deceased's safety [*Id.* at ¶ 42]; and exposed the deceased to a risk of harm that resulted in his death [*Id.* at ¶ 43]. In

10

so doing, the Plaintiff appears to merely restate his case in chief in various ways before conflating it with his argument on negligence.

Returning to the Plaintiff's 42 U.S.C. § 1983 cause of action, he fails to refer to a specific right secured under the Constitution or the laws of the United States, and likewise fails to present any case supporting his claim that the deceased had a constitutional right that was violated by the Defendants. He fails to present any jurisprudential support for the notion that a person should be free of questioning following a shooting, much less his claim of excessive questioning. He likewise fails to provide an analogous case in which a party was held liable for asking questions as part of their efforts to secure the scene and determine the identity of an attacker. Thus, he fails to satisfy the central requirement for stating a valid claim under 42 U.S.C. § 1983. See *James*, 535 F.3d at 373. Furthermore, the record reflects that the deceased received medical attention in a timely manner. Likewise, any minor delay can rationally be attributed to the police officers' reasonable actions to ensure their own safety as well as the safety of the deceased and the incoming medical professionals.

Even were all of this not so, the Plaintiff fails to represent any case law showing why the Defendants' qualified immunity defense would be inapplicable. The Plaintiff similarly fails to present support for his contention that the Defendants acted "in reckless disregard" of the deceased's safety or well-being, and instead only offers conclusory statements. Miss. Code Ann. § 11-46-9(1)(c). Thus, immunity is warranted to the Defendants City and police officers on these grounds as well.

Turning to the Plaintiff's negligence argument, he fails to point to any case law or statute that would require a police officer to administer medical care instead of securing the scene to allow for medical professionals to reach the injured party. Likewise, the Plaintiff fails to point to any

case law or statute that would guarantee the deceased the administration of timely medical care. As the Court noted above, absent duty, there is not actionable claim, and the Plaintiff has failed to provide any support for his contention of a duty owed to the deceased in the case *sub judice*.

The Plaintiff's failure to provide support, rather than mere conclusory statements, likewise dooms his intentional infliction of emotional distress. He fails to point to any conduct by any of the Defendants that could be considered so heinous or outrageous as to warrant validity under this cause of action.

## IV.  Conclusion

Simply put, there are no cases presented by the Defendant that are applicable or comparable to the facts in the case *sub judice*: (1) four minutes between a call to the police and arrival of officers at the scene, who then began communicating with the injured party in an effort to ascertain the identity of the perpetrator and then worked to secure the scene for their own safety and the safety of incoming medical professionals and (2) a two-minute window between the arrival of police officers and medical staff and perhaps a few minutes—if at all—thereafter before the beginning of treatment by the medical professionals on site.

Similarly, there are no cases to support the Plaintiff's claim that the Defendants had a specific duty to the Plaintiff as an individualized member of society. Nor does the Plaintiff articulate how the facts of the case might be considered so outrageous as to satisfy the requirements necessary for a viable claim of intentional infliction of emotional distress. Consequently, the Plaintiff's negligence and intentional infliction of emotional distress claims fall away as well.

For the above-stated reasons, the Court finds that the Plaintiff has failed to present evidence of a genuine issue of material fact with regard to his claims against the Defendants, and likewise failed to articulate any reason why qualified immunity or immunity under state law would not

apply. Therefore, the Court finds that the Defendants' Motions for Summary Judgment [111; 113] are well-taken, and shall be GRANTED.

An order in accordance with this opinion shall issue this day.

THIS, the ___31st___ day of March, 2022.

_____
SENIOR U.S. DISTRICT JUDGE