IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

MARCUS WALKER, INDIVIDUALLY,
AND ON BEHALF OF
THE WRONGFUL DEATH BENEFICIARIES OF
DE'AUBREY RAJHEEM ROSCOE,
DECEASED                                                                                         PLAINTIFF

v.                                          CIVIL ACTION NO. 4:20-CV-00156-GHD-JMV

CITY OF INDIANOLA POLICE OFFICER
SHABRIDGET CALDWELL,
INDIVIDUALLY AND IN HER OFFICIAL CAPACITY;
CITY OF INDIANOLA POLICE OFFICER
BENNIE MILTON,
INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY;
CITY OF INDIANOLA POLICE OFFICER
REGINA STRONG,
INDIVIDUALLY AND IN HER OFFICIAL CAPACITY;
THE CITY OF INDIANOLA, MISSISSIPPI;
MEDSTAT EMS CREW MEMBER
JONATHAN UPP,
INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY;
MEDSTAT EMS CREW MEMBER
ANDREW WALDA,
INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY;
MEDSTAT EMS, INC.;
AND JOHN DOES 1-5,
INDIVIDUALLY AND IN THEIR OFFICIAL CAPACITY                        DEFENDANTS

**OPINION GRANTING DEFENDANTS MEDSTAT EMS, INC., AND JONATHAN UPP'S MOTION FOR SUMMARY JUDGMENT**

Presently before the Court is the Motion for Summary Judgment filed by MedStat EMS, Inc., and Jonathan Upp (herein "the Medical Defendants") [133], in response to Plaintiff Marcus Walker's Complaint [1] alleging—individually and on behalf of the heirs and wrongful death beneficiaries of De'Aubrey Rajheem Roscoe, deceased [1 at 1]—that the Medical Defendants are liable to the Plaintiff under theories of negligence [1 at ¶¶ 88-125], gross negligence [1 at ¶¶ 129-

1

31], and intentional infliction of emotional distress [1 at ¶¶ 132-136]. For the reasons stated herein, the Medical Defendants' Motion for Summary Judgment [133] shall be granted.

## I.     Factual and Procedural Background

The Plaintiff is a resident of Tarrant County, Texas, and brings this action on his own behalf and on behalf of the heirs and wrongful death beneficiaries of De'Aubrey Rajheem Roscoe, who died during the events at the heart of this proceeding [1 at ¶ 1]. The Plaintiff is the brother of the deceased [1 at ¶ 139]. Defendant MedStat EMS, Inc., (herein "MedStat") is a Mississippi corporation that provides emergency medical services [1 at ¶ 8]. Defendant Upp is a paramedic employed by Defendant MedStat [1 at ¶ 6; 129 at 2].

The facts, as alleged by the Plaintiff, are as follows. On April 24, 2019, at approximately 8:00 p.m., Roscoe was shot on Oak Street in Indianola [*Id.* at ¶ 18]. Defendant MedStat received a call about the shooting at 8:01 p.m., and consequently dispatched some of its crew members, including Defendant Upp, to the scene [*Id.* at ¶ 19]. Similarly, at 8:05 PM, the IPD received a report about the shooting and dispatched some of its officers [*Id.* at ¶ 20]. These officers arrived on the scene at 8:09 p.m. and spoke with Roscoe, who was lying on his abdomen on the lawn at 608 Oak Street [*Id.* at ¶¶ 21-22]. The officers noted that he was lying in a pool of blood, and appeared to be shot in his right upper arm and right upper back [*Id.* at ¶ 23]. They questioned him about his injuries [*Id.* at ¶ 24]. At 8:11 p.m., the MedStat crew members arrived on the scene, where they found Roscoe lying on the ground, awake, alert, oriented, and with no active bleeding [*Id.* at ¶¶ 25-27]. They placed him on a stretcher, and loaded him into an ambulance, where they conducted a more thorough examination of their patient and found no other obvious signs of trauma [*Id.* at ¶¶ 28-29]. At 8:27 p.m., the ambulance transporting Roscoe and the MedStat crew

members left the scene, heading to the South Sunflower County Hospital; it arrived there at 8:34 p.m. [*Id.* at ¶¶ 30-31]. Roscoe was pronounced dead at 8:56 p.m. [*Id.* at ¶ 32].

To be clear, IPD was called five minutes after the shooting, and its officers arrived at the scene four minutes after receiving the call. MedStat medical professionals were called one minute after the shooting, and arrived at the scene ten minutes after receiving the call. The MedStat crew members treated Roscoe for sixteen minutes at the scene, and then left the scene with Roscoe in an ambulance heading toward the local hospital.

On September 3, 2020, the Plaintiff filed his Complaint [1]. As noted above, the Plaintiff alleges that the Medical Defendants are liable to him for negligence [1 at ¶¶ 88-125], gross negligence [1 at ¶¶ 129-31], and intentional infliction of emotional distress [1 at ¶¶ 132-136].

Defendant MedStat filed its Answer and Defenses on November 4, 2020 [19]. Defendant Upp filed his Answer and Defenses on December 2, 2020 [41].

On February 23, 2022, the Medical Defendants filed their Motion to Exclude Plaintiff's Expert Obie McNair, M.D., [128] and its corresponding Memorandum in Support [129]. On March 19, 2022, the Plaintiff filed his Response and Opposition to the Medical Defendants' Motion to Exclude [138] and its corresponding Memorandum in Support [139]. On April 4, 2022, the Medical Defendants filed their Rebuttal in Support of their Motion [149]. On May 13, 2022, the Court issued its Opinion [157] and Order [158] granting the Medical Defendants' Motion to Exclude Plaintiff's Expert Obie McNair, M.D.

On March 10, 2022, the Medical Defendants filed their Motion for Summary Judgment [133] and its corresponding Memorandum in Support [134]. In said documents, the Medical Defendants repeat their arguments from their Motion to Exclude Plaintiff's Expert Obie McNair, M.D. [128]. They argue that, since Dr. McNair, the Plaintiff's only expert witness, should be—

3

and eventually was—disqualified by the Court, the Plaintiff lacks the expert testimony required to establish the facts needed to support the Plaintiff's case [134 at 4]. These required facts include establishing the standard of care applicable to the Medical Defendants, demonstrating that they breached said standard, and causally connecting that breach to Roscoe's death [*Id.*]. On April 4, 2022, the Plaintiff filed his Response and Opposition to the Medical Defendants' Motion for Summary Judgment [150] and its corresponding Memorandum of Support [151]. In these documents, the Plaintiff reiterates the arguments that they presented when responding in opposition to the Medical Defendants' Motion to Exclude [*Id.* at 8]. On April 29, 2022, the Medical Defendants filed their Rebuttal in Support of their Motion for Summary Judgment [153].

The matter is now ready for review.

## II. Legal Standards

### A. Summary Judgment

Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). This rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. The party moving for summary judgment bears the burden of identifying its basis for the motion, and must point to specific parts of the record that support its contention of an absence of a genuine dispute of material fact. *Id.* at 323.

After the moving party does so, the burden shifts to the non-moving party, which must "go

4

beyond the pleadings and by … affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). When there is a dispute about the facts, the Court must view the facts in the light most favorable to the non-moving party and likewise must draw reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F.App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

Any claim that is not raised in a response to a defendant's motion for summary judgment is deemed to be waived. *Aldrup v. Caldera*, 274 F.3d 282, 288 (5th Cir. 2001). Moreover, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (citing *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas*, 136 F.3d at 458. That said, summary judgment "must be used cautiously or it may lead to drastic and lethal results." *Murrell v. Bennett*, 615 F.2d 306, 309 (5th Cir. 1980).

### B. Medical Expertise in Negligence Cases

"Mississippi law requires the plaintiff in a medical malpractice action to establish… three elements 'by expert testimony.'" *Patton v. Mobile Medic Ambulance Service, Inc.*, 330 Fed.Appx. 64, 64-65 (5th Cir. 2009) (quoting *Brown v. Baptist Mem'l Hosp. DeSoto, Inc.*, 806

5

So.2d 1131, 1134 (Miss.2002)); *see also Leatherberry v. American Medical Response, Inc.*, 2019 WL 1529394, *3 (S.D. Miss. 2019) (holding that "to succeed on a medical negligence claim, a plaintiff must present expert testimony establishing the applicable standard of care, that the defendant breached it, and that the breach caused the injury") and *Terry v. Clinton Health & Rehab Center*, 170 F. Supp.2d 686, 688 (S.D. Miss. 2000) ("In Mississippi, expert testimony is required to establish a claim of medical negligence unless the matter at issue is within the common knowledge of laymen."). These three elements are the applicable standard of care, a breach by the defendant of that standard, and a showing that the defendant's conduct was the proximate cause of the alleged injury. *Patton*, 330 Fed.Appx. at 64.

### III. Analysis and Conclusion

As indicated in the prior section, the law is quite clear in this area; a plaintiff in a case like the one *sub judice* must provide expert testimony to support his case. *See supra* Part II.B. Both the Plaintiff [151 at 7] and the Medical Defendants [134 at 4] agree on this point. Since this Court has excluded Dr. Obie McNair from testifying in this case [157; 158] and the Plaintiff has not presented any other expert witness, he has failed to support his case in the required manner. Therefore, the Court finds that the Medical Defendants' Motion for Summary Judgment [133] is well-taken, and shall be GRANTED.

The Court also notes that in granting this Motion for Summary Judgment, it will dispose of the only remaining active, named defendants in this case. This is because: on March 22, 2021, the Plaintiff filed a Notice of Voluntary Dismissal Without Prejudice of Defendant Regina Simpson, who had been inaccurately identified by the Plaintiff as Regina Strong [79]; on March 31, 2022, the Court granted Motions of Summary Judgment dismissing Defendants Shabridget Caldwell, Bennie Milton, and the City of Indianola [146; 148]; and on May 13, 2022, the Court

issued an Order of Dismissal as to Defendant Andrew Walda [159]. Consequently, the Order granting the Medical Defendants' Motion for Summary Judgment will also close this case.

An Order in accordance with this Opinion shall issue this day.

THIS, the  1st  day of June, 2022.

_____
SENIOR U.S. DISTRICT JUDGE